Good morning, your honors. My name is Mary Frudden, and I represent the Frudden Appellants. If you could keep your voice up, I would appreciate it. Sure. Eugene Bolling, who is with the SGLC, and Amita Sirian is marking five minutes of our time. And I would like to reserve, if I could, two minutes of my time. At its core, this case concerns the compulsion of students to convey the student to school's messages via a mandatory school uniform policy, and at the same time restricts students from conveying their own messages while they are clothed. Since the break-off policy prohibits students from wearing anything other than the sanctioned uniform, it substantially or almost entirely precludes the students from wearing clothes as a form of expression and as a medium of expression. And so, when we look at the face of the policy, which is what the Court of Jacobs did and what Reed v. Gilbert, the more recent U.S. Supreme Court case, says, when we look at the face of the policy first, you can show whether it's contact-based or contact-neutral. And clearly, the face of the policy here, and when you say contact-based... So, are you still challenging the uniform itself? Yes, Your Honor. And so, isn't the law clearly well established that a uniform, a qua uniform, is constitutional? I believe that what Jacobs said was a uniform that doesn't speak a message,  and in Jacobs, it was solid colored shirts and solid colored bottoms, so that there was no message that was conveyed whatsoever, and the policy itself was contact-neutral. What part of the message of the uniform, in this case, do you object to? Do you object to the single name? It's the uniform in general and the message that wearing the uniform conveys. The policy itself... I think I misunderstood. I heard you say before that it had to do with the color of the uniform. In Jacobs, Your Honor... Is that better? In Jacobs, Your Honor, there were solid colored shirts and solid colored bottoms, and in Jacobs, the Ninth Circuit said that was not any kind of a message. I'm sorry. So, when you started varying colors, then you were conveying a message? Your Honor, the purpose of the policy itself, if you look to that, it says that the main purpose of the Roy Com Elementary School uniform policy is to establish the culture of one team, one community at Roy Com Elementary School. As such, uniform forms serve to foster school spirit and unity. I understand all that, but I'm just trying to make sense of what you said before with regards to colors. So, the uniforms that are more common, perhaps a solid color, are fine? I think any time a uniform conveys a message, and that message is the school's message, then it has to be considered content-based and student scrutiny should apply. So, you're saying some of these uniforms that are the colors of the school might be objectionable, but colors that are not the colors of the school? Well, I think that the message here was one team, one community, and that's the short version of the message. The message itself, the particularized message, if you will, is completely set forth in the policy. Let me get my bearings here a little bit. At the time that this was brought earlier, we had the logo, and we had the… Tomorrow's leaders, John. The kids came into school, and we had the gopher, and we had tomorrow's leaders. I imagine my understanding is after remand, the school took away the tomorrow's leaders, and the uniform does not require the name of the school or the gopher. I'm just trying to get my facts straight before I go forward. Your Honor, it's my understanding that the uniform shirt at Roycom still has the logo, which they have identified as the stylized gopher in the name of the school itself. Tomorrow's leaders was removed from the shirt in the year 2014-2015. So, with respect to prospective relief, the only thing we're looking at now is the gopher in the name of the school, correct? The color? We… And then… Actually, prospective relief from Frieden, though plaintiff's, is no longer available because neither one of them attend that school anymore. Your insurance hasn't been satisfied by the school? No, Your Honor. It's… I'm sorry. They have not been satisfied by the school. The message was that the uniform was to get paid, and I'm sorry. I think that the photographs in the file itself are black and white. It may not be so clear. I do have these in front of me. I think the first witness, your major complaint was the phrase, It has always been, through this contention, that the words tomorrow's leaders are compelled speech. And the uniform itself, in the sense in which it was used in this case, is also compelled speech. Just as your black robes could be considered pure speech, or akin to pure speech, as Tinker's lamp band was. I'm sorry to give you my worries. This is procedural. I'm very honest with you with the case. So, neither of the two plaintiff's children is any longer at this school? That's correct. And you're saying, therefore, there's no prospective relief, no matter what the uniform now says, and your complaint is only for damages? That's correct. And only for damages, then, for the period during which they were required to wear the shirt that had tomorrow's leaders on it. And the period from the final year of 2014 to 2015, which Gino attended the school, even though it did not have tomorrow's leaders on it. Right. But part of the period you're seeking damages, tomorrow's leaders was on it. But there's no prospective relief, quite unrelated to the GINO form. There's no prospective relief, initially, in the case, because the kids are graduating tomorrow. That's correct. Now, that helps you quite a bit in terms of just understanding where we are. So, the only issue, really, here is damages. Yes, that's right. And the only one is, is there no qualified immunity? I'm assuming, for purposes of my question, that compelling state interest could not be satisfied. Now, the district judge thought it could, but I'm going to assume it can't be. Why is there not qualified immunity from the damage recovery from this lawsuit? Well, the school district itself, this time, in general, too, qualified immunity. And is the school district itself one of the defendants? Yes, Your Honor, it is. And the individual defendants, which would have been the superintendent, the principal, and the area superintendent, are not entitled to qualified immunity because that law was clearly established. The law, with regard to student rights, has been clearly established in multiple cases, specifically regarding student's rights. We have Dinker, Chandler, which Chandler is a United City Court of Appeals case. It was clearly established that a student could not do a writing on their uniform, et cetera. I believe that Woolley and Barnett clearly established that you cannot compel a citizen, whether they're a student or some other citizen, you cannot compel them to convey a government message. I'm sorry. Yes, you cannot compel them to convey the message of the government. Did you say Dinker or Chandler? I did say Dinker. Dinker is the restriction on student speech, where there are viewpoint restrictions, such as the restrictions here. Although, in Dinker, it was happening at the time. In Dinker, I thought it had to do with armed anti-protest in the Vietnam War. Yes, and they could not restrict those students from wearing garments in protest. And here, what they're doing is restricting students to wear the clothes that they want to wear, because they say clothes that express socioeconomic status, they're being targeted. Clothes that are expressing socioeconomic status is being targeted and restricted, and that is a viewpoint-based restriction. And so, Dinker would apply from that perspective. I would suggest that the court takes a look at it both from a restriction and a completion issue, and that is what the students have always argued here. And so you say that because the school officials in Dinker restricted the students from wearing armbands, that was correct then, of course. They could wear the armbands. They could wear the armbands, yes. But you say because of that, that they were unnoticed, that they could do that. That they can't restrict students' speech where it doesn't substantially and materially affect the academic environment. Do you think their restriction requires a positive act as opposed to a password? The wearing of the armbands? Yes. The use of the phrase on the school uniform in the school, tomorrow's leaders. Yes, Jerome, and there's the restriction and the compulsion. The compulsion was to wear the phrase, tomorrow's leaders. The compulsion from the student's perspective is also the compulsion to wear the uniform in order to convey the message of one team, one community, and the rest of the message that's in the policy itself. And the restrictions that they have, not to wear brand-name clothes, not to reveal or express socioeconomic status, and all of the other restrictions that go hand-in-hand with wearing a mandatory school uniform. I think the laws taken as a whole clearly establish that. Deker and Chapter both show the laws with regard to restrictions, the rights that students have at school with regard to restrictions that can be imposed upon them, and that the law in Boolean and Barnett both go to whether a government can compel students to convey their messages. Okay, you're down to about three minutes. Mr. Follett's time is running out. I'm just about to tell you. You have 15, you've used 12 of them. You sought to preserve five for Mr. Follett, and for a bottle for yourself. Why don't you stop now? I will stop now. We'll give Mr. Follett five minutes, and then we will give you two minutes for a bottle. Thank you, Jerome. I'm proud that we took you over with our questions. Thank you, Jerome. We'll make sure you get to say what you need to say. Thank you. If you are listening to me while I'm representing, you can unmute yourself. In this situation, while we wish that the clock is on, there we are. Okay. Thank you. This is Andy Press, Los Angeles. I was primarily focused on the question of whether the school also began a content-based exclusion group as soon as the nationally recognized youth group uniforms passed the streets here. Is there an agreement to ask for perspective relief as of today? Yes, Your Honor. That's a direct question. The Student Press Law Center is not in the mix. So the only question today, which is, yes, Your Honor, I'm going to leave you first off with the qualified immunity as to the individual defendants. Your Honor, we think it's unnecessary to the argument under our briefness. The damage is generally against the school district, but we think that it was quite clear that just as you can't put somebody who requires somebody to put something in their car, you can't require somebody to put a model on their body. And if it is so ill-timed, who are those thinkers? I mean, there's Alex and I'm afraid, eat your vegetables. Well, Your Honor, we've received this argument. We think this pathodizing discourse of the group is now, in this case, are rejected as something that you don't think is rejected. Is it really rejected? Your Honor, they said, well, we're going to remand to see if this group is compelling state interest. Oh, Your Honor, the panel didn't remand to see if this group is compelling state interest, but they rejected the argument that it was an anodyne, that it didn't count as an ideological message. But compelling state interest might be, in some sense, affected by what is being compelled. Your Honor, we don't think that would be so. The interests that are identified here are basically two from the court below and then two more from the school district associated defendants. One was that there is not an interest in an academic progress. While there are some theories that there is a use of uniforms that are conducive to that, there's no evidence that we are aware of a different world. So we believe that that's a flaw that also are conducive to that. The second interest was the interest of preventing bullying. And that too, it seems to us, would not be affected. But in the nature of the model, most of the government's theory is the model isn't moving there because that's a way of making sure that nobody can sneak in and do super fancy, high-end consult research and as a result, there would be socioeconomic status-based bullying. We think that's really far-fetched theory, but it makes sense for that. So regardless of the ideological or non-ideological quality of the model, there's an obvious, less restrictive alternative, which is to say, the students who have to wear this should be being invited from us, but it doesn't have a model on it, or at least that lack of a model is an option. The third interest that is identified by the school district is the character development. So they seem to think that the motto is just to hand it on. They seem to think that the motto promotes the character development and makes them teach those messages by the leadership. And we think that it's quite clear since Barnett and since Bulling that, however, when I want to teach messages, I plan to do that by really telling people to study even on their car, much less on their underwires. And the fourth interest is administrative efficiency. That is an interest that I think they raise with regard to the content-based execution for the actual curriculum students. So regardless of those interests, they're affected by people that the motto is not the ideological or not, and that's why we think that the prior announcement conclusion that the ideological status of the motto really ought to disclose that issue. So, Your Honor, so you think that in a school, the defendants, the individual defendants should have realized that whatever power they may have, you know, Tinker and Fraser and Morrison-Frederick, that clearly doesn't apply here. None of those cases apply here. Okay. The damages are we looking at? Assuming that the first question I answered against the school district, because they don't really disclose it now, you know, it's not incorporated. I mean, I think that we... But what about some of the other damages? Your Honor, there are at least seven other damages that are available as a prior interest. And he has crossed the upper limit? You, Your Honor, the APAC does not have an opinion on that subject. The APAC does not have an opinion on this subject. Although, of course, the main one would be a Chinese visa, so that's a separate question for their intention. Your Honor, I would just like to ask if there's anything I can say with regard to the school district argument. The main concern is if there's this decision out there that says, well, these interests are compelling enough to justify even requiring students to wear a motto or authorize content-based distributions, that would be a precedent that would justify a wide range of other things. So, excuse me, should we satisfy normal views to ordinarize security? Excuse me. Do you think it would describe the Chinese group? Your Honor, that's an interesting question. We think it would not do even that. For example, we don't think that there's a substantial government interest in promoting character development by forcing people to say things. Nor do we think that there is a clear enough connection between the motto and the interest in preventing bullying and the interest in promoting academic excellence that are in the provider's pool. Your Honor, I think there's two varieties. Your Honor, both of them include a content-based interest. The rationale is we want you to display this motto because we want you to absorb the message of the motto. That's a content-based interest. And we think that this court was, therefore, quite correct in requiring such scrutiny. But we think even under intermediate scrutiny, you can't do a substantial interest in promoting pride through the means of requiring you to display a message. I'm not sure why not, but I don't want to disappoint you. If Your Honor's excuse me, so we've just returned to the time frame of the prior panel discussion. It seems to me that there's a lot more to this discussion. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, my name is Sarah Allen. I represent the school officials in regard to the lawful school uniform policy at Rhinelm Elementary School. The most basic and fundamental... And you're representing the individuals as well as the school? Yes. It's like doing the calling of the school officials. It's easier for me on the tongue. The most basic and fundamental purpose of our education system is to pass on our knowledge and skills to our nation's youth. Not just limited to the academic context, but also to grow strong character and citizenship in order to ensure the maintenance of our democratic society. Congress, the Department of Education, and our nation's highest court have all recognized the vital educational purpose of instilling character education into our schools in order to enable our students to understand, care about, and act on core ethical values such as respect, justice, civic virtue, and responsibility for self and others. In furtherance of this compelling purpose, the school officials adopted the uniform policy which included a non-political motto encouraging leadership and positive character development and also allowed for an extension to the uniforms that was intended to promote student-focused learning and ensure regular attendance. Well, let me ask you a question that was basically posed by the other side. And it's for your response. Well, you're promoting leadership. I get that. But what about the people who want to be followers? And can you be a follower and be just as kind, be just as worthy? I mean, not everybody can be a leader. Respectfully, Your Honor, the purpose and the compelling purpose was to instill those character development skills for our students to encourage them to take on those leadership roles. Just as the United States Department of Education, their guidance has said part of the way to instill those educational goals and purpose is to encourage students to take on leadership roles and to be involved in the school because that's where they build those leadership skills in order to ensure that when they become adults and in the future society, it helps to maintain our democratic nation. But isn't that justifying compelling the students to also carry that message for their persons? Yes, Your Honor. The motto at Tomorrow's Leader served as it was only required in the school setting, which I think is important here. It almost constitutes school speech. And in the Hazelwood Court, they said that school speech was actually a rational basis for view because they were only sitting in the... It's only in school speech. It's only in school speech. In this instance, we are encouraging students as a reminder to take on those leadership skills. And it serves that purpose in the school setting to place a line on where it might cover any potential logos to diffuse or associate economic issues that might occur at the school. What do you mean in the motto to associate economic issues? Respectfully, although the amicus claims that the motto Tomorrow's Leaders did not serve our compelling purpose to prevent bullying, actually the motto Tomorrow's Leaders also served that compelling purpose. It encourages students to take on a very difficult leadership role that they need to stand up against bullying if they see students being bullied in their school environment. Research has shown that silence and standing idly by while your peers get bullied and not standing against probably the popular view would then encourage and foster bullying. So if you wanted the school removed, or the motto removed... Why did we remove it? We believe that we did have a compelling purpose. We as a student, a district-wide policy, making sure that all of our schools, we have a lot of them within our district, that they don't put a motto or an exception just as purely economical. In this instance, we do believe that the school had a compelling purpose. We certainly don't want to be going into court for every single school and now they've been arguing for that. It sounds like you're inviting us to revisit districts throughout the United States. As far as I can tell, it's already been decided. And we were at the point of assessing whether this was an amenity or not, and whether this is appropriate. Respectfully, Your Honor, it is our position that this, the motto and exception, do not fall within district-spirited analysis. We understand that was decided by the previous panel, but... It hasn't been. The previous panel were bound by the decision made by the previous panel, but it still is an amenity. That's correct, Your Honor. So then our position now is that it does play the educational setting, plays into the analysis of whether or not we met the compelling purpose here. If we are subject to district scrutiny, we believe that we still need it, because we are educators, and it's our role and it's our duty to educate and instill messages of civility into our students. It's different than the only case where there were adults. It's dangerous. The major act of civility, I don't know if you want to call it courage. Dangerous. I'm sorry, I'm sorry. I think I lost you. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'm sorry. I'll steer it. I'll steer it. I will steer it. We're a match. We're a match. Right. Well, as I said, the action of tomorrow's leaders was intended to encourage students that the decisions that they make today can impact what they become tomorrow, and as we've discussed, the United States Department of Education, in fact, since 1994, has said that part of that is to take on leadership roles to build those character skills. So that was actually our head message, that the decisions you make today can impact your future and strive to become a leader and develop those skills. Also, did that meet the least restrictive means of conveying that message? Respectfully, Your Honor, it is our position that the least restrictive means should not be implied here. We understand that. Yeah, but if we do determine that a student's group would pass the message, it would pass the message being conveyed on the clothing in the least restrictive means of conveying that message. Respectfully, yes, Your Honor, it still is the least restrictive means because one point that I want to make, because it also goes to the damages aspect as well, in order to... the Supreme Court has called that the compelled speech doctrine implies a situation where a person disagrees with the message or finds it morally repugnant. Here, there was no evidence presented to the school or within the initial filings by the prudence in this matter that they took any issue with the lot of tomorrow's leaders. They did not... Also, Your Honor, couldn't that message be conveyed in a classroom setting as opposed to compelling the children to wear it on their person? Respectfully, Your Honor, courts have granted a lot of difference to our educators. They've been finding new ways to teach our students, so they have said that education is not limited to brick and mortar buildings and textbooks. There are always new ways to inspire and instill positive messages in our students and to reach out, and this was a way of the school officials to accomplish that message and have a constant reminder... The question is whether it was the least restrictive means. It was, legally, but was it the least restrictive way? So the argument is, how could it be less restrictive here? It's just to take off the motto, which is to have the logo. Again, the educators wanted to have that constant reminder. It was a short, concise statement that was not subjectionable by anybody, including the prudence who filed this lawsuit. There's been no objection by the prudence that they took any issue with this motto, and that makes sense. So how are they compelled to speak the message if they either agree with it or could care less? Because they take issue with having to wear the motto, having the children wear the motto on their clothes, so they take issue with being compelled to wear the uniform and to have the motto on the uniform. Yes, Your Honor. Actually, their issue has always just been with the uniform, generally not with the motto. In fact, in their first minute complaints, in over 200 allegations, the motto tomorrow to theirs was mentioned only once just as a descriptor for what the shirt looked like. There were no allegations as to what the objectionable message was to the prudence and what message they wanted to say to the contrary, which again, it's unclear how that even, that is a compelled speech onto the students. And so that also then goes to damages because we also argue that the prudence have failed to meet their burden to present any evidence of actual damages here, including emotional distress, et cetera. But even if we were looking at nominal damages, those two should not be available in this case because they haven't shown any evidence of an actual constitutional infringement based on the motto or exception, which I understand the scrutiny today argues that the uniforms generally are at issue, but those are not subjects of strict scrutiny review and those were not the subjects of the remand proceedings down to the district court. Is it true to talk about whether the school officials, the school district are due or school is not in effect? Yes, Your Honor. The school officials were correctly granted qualified immunity by the district court. As the district court noted, there were no cases on point, especially in the education setting. Bully and Barnett were not sufficiently aligned to what we were doing here. Although Barnett was in the school setting, they were forcing political speech onto a scene which our nation's highest court has said is the highest level of speech. It has to be the highest level of protection to be afforded. That's not important here because we're talking about a message tomorrow's leaders that it's not political, it does not force that highest level of protection there. And then the bully case was in regards to adults in the regular setting who actually were Jehovah's Witnesses so they actually had a religious objection to speaking that message. And courts have consistently said that the rights of students are not automatically co-sensed with the rights of adults in the regular community. And also the fact that a great amount of deference is provided to our educators in order to instill those educational goals on our students. The school officials were not qualified immunity with respect to the individuals in question, with qualified immunity with respect to the individuals in question. Oh, first of all, I apologize. There is a case law that says that qualified immunity is not appropriate for any governmental entity, the entity. So for the individual defendants, we do believe that qualified immunity is appropriate in this case. And it was appropriate. I'm asking a constitutional question. For the school district, that's correct. Although, again, we argue that one, that the motto and exception did meet the compelling purpose. And also that even if this court does have some constitutional concerns with the uniform policy, no damages are appropriate in this matter. Because there certainly was no evidence presented by the friends that the motto or exception just goes to cause them any damages or any constitutional infringements on their rights. Because the exception as well, they had no objection to the fact. Although the ninth circuit panel, I think, mistakenly thought that the American East Soccer Organization shirts that the students were wearing, that they did not fall within the nationally recognized youth organization exception. That did. They did fall within that exception. So they actually belonged to that exception and could wear their uniforms. The issue. Would it apply to other sort of professional games, games games, or something that they sought to wear all the time? Yes. I believe so. That actually goes for a narrowly tailored purpose, that the whole purpose was to ensure that the students didn't go to school, so the parents wouldn't pull them out from school or bring them in late and disrupt the other students while kids were going in and out of class. So that is why the exception was narrowly tailored. Because it was only for on game days or practice days when that would be a psychological. They would need to wear those shirts after school. And I believe that the Ferdinand children were wearing their ANYSO shirts in protestive uniforms, generally. At least that's what was the communication to the school officials. And in addition, just on that note, on the narrowly tailored application for the exception, again, in order for the Ninth Circuit panel could not even really articulate what the message or viewpoint was of a nationally recognized youth organization. Apparently they just said it was to the exclusion of potentially local organizations. However, it's unclear what those messages are collectively of a nationally recognized youth organization. So without a viewpoint, it's unclear what message that they are expressing to the exclusion of others. So we believe that that was narrowly tailored. And finally, on the issues of damages as well, the clear precedent has said that Thomas Fruden, as a pro se attorney and the parents of the two children here, are not entitled to her attorney's fees if this court were to award some damages. That's the Kay decision for the splitting board, and then the Ford v. Long Beach decision of the Ninth Circuit. She falls within both those categories. She represented herself until she just recently removed herself. But we argue that was her attempt to try to get around the Kay decision and try to collect her attorney's fees. And so we did object to that at the lower court level. But they said that issue was on the right hand. And then also, representing the students here, those are her children. And the Long Beach decision clearly says that a parent cannot recover attorney's fees for representing their children in a case. So for the foregoing reasons, we request that this court uphold the issue court's grant of summary judgment in favor of the school officials. And thank you so much for your time. Thank you very much. And if you'd go two minutes on the clock, please. Mr. Roberts, it would be incorrect to say that we did not ever object to tomorrow's heaters. That was brought out in the transcript of the motion to dismiss hearing. It was brought out on the opposition to the motion to dismiss, all of which is in the record below. It also is incorrect to say that we did not The students wore their AYSO uniforms in contest. And it was also to establish that they objected to showing the school's message of one team, one community. The school authorities did not establish scrutiny, which they must do under Reed v. Gilbert, because it was a content-based exemption. It was content based on its base. And it was content based by the evidence that the school authorities submitted at the time of summary judgment. There was no problems of any bullying. There was no actual need for uniforms. There was no actual need to restrict the students' clothes. At Raycomb Elementary School, there was no actual need to improve test scores. I mean, as a state, you're arguing it's uniforms. As a state, it's uniforms. But if you say you're arguing it's uniforms, we're bound by Jacobs. I think uniforms are OK. Jacobs was not a content-neutral policy, Your Honor. Well, that's not what I'm saying. And they were uniforms. To the extent that Liz DeSembre will put in tomorrow's leaders on it, then you've got a different case. But to the extent you're just arguing it's uniforms, I think Jacobs tells us that that's a closed question. What Jacobs says, respectfully, Your Honor, what Jacobs says is a content-neutral policy. And this was not content-neutral from the start. The purposes for which this policy, which were laid out clearly and expressly in the written policy itself and the evidence that they supplied over time with summary judgment, show that it was a content-based restriction to begin with. The purpose of the uniforms were content-based, not content-neutral. So it's distinguishable from Jacobs from that perspective. Also in Jacobs, they didn't compel them to wear the school's logo. That was an option that they could compel them, that they could wear the logo's. Here, they've compelled them to wear the logo. Thank you. Thank you very much. Thank both sides for their helpful argument. I have two members. Billing is not submitted for decision. Thank you, Your Honor.
judges: Fuentes, W. Fletcher, Rawlinson